**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00318-CR**
_____

**DARRON DEWAYNE DENBOW JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B190185-R**

**MEMORANDUM OPINION**

Darron Dewayne Denbow Jr. appeals his conviction and sentence for burglarizing a habitation. In three issues, which we have rearranged, Denbow argues (1) the evidence of entry, an element of the crime of burglary, is insufficient to support the jury's finding of guilt; (2) at punishment, the trial court erred by allowing the State to prove Denbow made an unwarned statement threatening to shoot a deputy while in police custody when he had not been warned of his rights; and (3)

1

at punishment, the charge the trial court submitted is deficient because it fails to instruct the jury that, before considering the evidence that Denbow engaged in several wrongful acts—testimony showing he threatened to shoot his father, threatened to shoot a deputy, and threatened to shoot a district judge—it must find, beyond a reasonable doubt, that Denbow did in fact commit that wrongful act. We conclude Denbow's arguments on issues one and two lack merit. And as to issue three, Denbow acknowledges the record must show the trial court's failure to instruct the jury about the burden of proof applicable to his wrongful acts caused egregious harm based on his attorney's failure to object to the charge. We conclude Denbow's third issue lacks merit because the error he complains about did not cause egregious harm. For the reasons fully explained below, we will affirm.

Background

We limit our discussion of the facts to the testimony relevant to resolving the issues Denbow argues in his brief. During the guilt-innocence phase of Denbow's trial, *Vickie*,[1] who owns a home in Orange County, Texas, testified that in December 2018, she left home to attend a party. When she returned about three hours later, Vickie found a window in the home had been opened with the curtains covering the

---

[1]Because the Texas constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process," we identify the individual identified in the indictment as the victim of the theft by using the pseudonym "Vickie." Tex. Const. art. I, § 30.

window on the floor. Vickie also noticed several items were missing from the home: baby food, trash bags, shampoo, conditioner, and razors. And Vickie found that most of the items of food in her refrigerator and freezer were gone.

Deputy Dustin Bock, an Orange County deputy, was one of the officers dispatched to investigate the burglary of Vickie's home. On his way to the scene, Deputy Bock stopped at a convenience store near Vickie's home. While there, the deputy saw Denbow, a person the deputy testified he had known for about nine years. According to Deputy Bock, when he asked Denbow about the burglary, Denbow told him that he didn't know anything. Deputy Bock offered to give Denbow a ride home, which Denbow accepted. Denbow took the officer to the mobile home where he was living, a residence that, according to the deputy, is less than a mile from Vickie's home. The deputy asked Denbow if he could come inside when they got to Denbow's residence. Denbow agreed. While inside, Deputy Bock noticed several items in the home consistent with the ones reportedly stolen in the burglary. The deputy took photographs of these items. At trial, Vickie testified the items and food shown in the pictures taken by Deputy Bock matched the items she found missing from her home when she returned from the party.

Analysis

*Is the evidence sufficient to support the conviction?*

In issue one, Denbow argues the evidence is insufficient to support his conviction for burglary because the circumstantial evidence does not establish that he was the person who entered Vickie's home. To prove the defendant committed a burglary, the State must prove (1) the defendant, (2) without the effective consent of the owner, (3) entered a habitation, or a building (or any portion of a building) not then open to the public, and (4) with the intent to commit a felony, theft, or an assault.[2] Under the statute making burglary a crime, the term *enter* is defined as "to intrude: any part of the body; or (2) any physical object connected with the body[.]"[3]

When evaluating whether sufficient evidence supports a defendant's conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.[4] A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[5] The jury is the ultimate authority on the credibility of witnesses and the

---

[2]Tex. Penal Code Ann. § 30.02(a)(1).
[3]*Id.* § 30.02(b).
[4]*Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).
[5]*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

weight given to the testimony.[6] Stated another way, as a reviewing court, our role is not to sit as a thirteenth juror so that we may substitute our views regarding the evidence for the view the jury chose to adopt.[7] In a trial, the jurors are free to believe some, all, or none of the testimony that is presented during trial.[8] Jurors may draw multiple inferences from the evidence so long as the inferences the jury draws are reasonable inferences from the evidence presented to the jury in the trial.[9]

Here, the evidence that Denbow entered Vickie's residence is circumstantial. For instance, none of the witnesses testified they saw Denbow go inside Vickie's home on the day the burglary occurred. Even so, the record contains circumstantial evidence that allowed the jury to infer Denbow was the person who took the items that Vickie found missing from her home. In weighing the circumstantial evidence, the jury had the right to consider all circumstantial evidence just as it would have considered direct evidence relevant to proving Denbow entered Vickie's home and stole items he found inside.[10] Under Texas law, the evidence in the defendant's trial need not all point directly to the defendant's guilt.[11] Instead, the question in a sufficiency review where the defendant argues the circumstantial evidence is

---

[6] *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
[7] *Id.*
[8] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
[9] *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319).
[10] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).
[11] *See Temple*, 390 S.W.3d at 359.

insufficient to support the verdict is whether the verdict the jury reached is reasonable given the combined and cumulative force of the incriminating circumstances based on evidence before the jury in the defendant's trial.[12]

Even when the parties "disagree about the logical inferences that flow from undisputed facts, [w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[13] When a defendant has property in his possession that the evidence shows was recently stolen and the evidence contains no reasonable explanation that explains why the property is in the defendant's possession, it is reasonable for the jury to infer "the defendant is the one who committed the burglary."[14]

In Denbow's case, the jury heard two of Denbow's neighbors testify they saw Denbow near Vickie's home on the day the burglary occurred. One of Vickie's neighbors testified that she called the police after noticing a man walking down the street carrying a heavy bag. The neighbor lives on the same street that Vickie lives on. The neighbor took the man's photograph, and the jury had a right to conclude from the image and from looking at Denbow that he is the person in the photo seen carrying a bag. One of Vickie's other neighbors testified that, on the day of the burglary, he saw Denbow and recognized him because he had coached Denbow

---

[12]*Id.*
[13]*Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006).
[14]*Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007).

when Denbow was growing up and playing baseball. According to that neighbor, he saw Denbow make several trips carrying garbage bags while coming "in and out of [Vickie's] driveway[.]"

Deputy Dustin Bock testified that he went inside Denbow's home after Denbow invited him inside after picking Denbow up at a convenience store that is located a short distance from Vickie's home. While inside the home, the deputy saw various items that are consistent with those Vickie reported as stolen. The deputy took photographs of the items and the food in the refrigerator while in Denbow's home. At trial, Vickie testified she recognized the items in the photos as items she found missing from her home on the day the burglary occurred. As to one of the items, the hamburger meat in one of the photos, Vickie testified she recognized the package of meat because it was "[t]he hamburger meat that [she] package[d]" and then left in her freezer.

The jury could have also rejected the explanation Denbow offered to Deputy Bock to explain why he had the items that matched the items Vickie discovered were missing from her home. For instance, Denbow told Deputy Bock he lived with his cousin in the mobile home. But there is no affirmative evidence showing that Denbow's cousin committed the burglary. And other than Denbow's statement attributing the source of the items to his cousin, the record contains no other evidence to show that's where they came from. Add to that the fact there is no testimony

7

showing that anyone saw Denbow's cousin in or around Vickie's home at any time, including the day the burglary occurred. Here, the jury could reasonably reject Denbow's account about why the items Vickie tied to the burglary were later found by police in Denbow's home.[15] Simple common sense alone allowed the jurors to infer that it would be necessary for a person like Denbow to enter Vickie's home so that he could take the various items she testified she left inside.[16]

In the end, the evidence supports the jury's conclusion finding Denbow entered Vickie's home and took the various items Vickie testified she left inside her home. Denbow's first issue is overruled.

*At punishment, did the trial court abuse its discretion by allowing the State to prove Denbow made an unwarned statement threatening to shoot a deputy while in police custody when he had not been warned of his rights?*

In issue two, Denbow complains the trial court abused its discretion by admitting Deputy Bock's testimony about a threat Denbow made to shoot the deputy as the deputy was taking Denbow to jail. According to Denbow, the trial court should have excluded the testimony about the threat because he made the statement before being warned of his right not to speak to the police before consulting with an attorney.[17] Yet when the State offered Deputy Bock's bodycam recording that

---

[15]*See id*. at 726.
[16]*See Browning v. State*, 720 S.W.2d 504, 509 (Tex. Crim. App. 1986).
[17]*Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22.

captured Denbow's statement, he never objected to the State's proffer. Instead, Denbow's attorney stated: "No objections." Before the jury saw the recording, Denbow's attorney told the trial court that he was "going to renew [his] objection that the court overruled prior to that[,]" objections the record shows hinged on Denbow's claim that his threat to shoot the deputy was more prejudicial than probative and inadmissible as evidence of an extraneous bad act.[18]

Under the general rule of error preservation, which is the rule uniformly followed by Texas courts, the objection that a party makes in the trial must comport with the claim the party raises in his appeal.[19] For that reason, "[a]n objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal."[20]

The argument Denbow advances in issue two does not comport with the objection he raised during his trial.[21] Since Denbow failed to preserve the complaint

---

[18]Denbow's objection was that if the evidence about the threat Denbow made to the deputy was being offered "as a bad act, I'm going to object under 404(b), 403."

[19]*Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

[20]*Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990)).

[21]*Resendez v. State*, 306 S.W.3d 308, 316-17 (Tex. Crim. App. 2008) (waiver where there was no objection to the evidence at trial based on article 38.22); *Gauldin v. State*, 683 S.W.2d 411, 413 (Tex. Crim. App. 1984) (waiver occurs absent an objection to the evidence in the trial court pointing out the evidence is inadmissible because the defendant made the statement while in custody and before he was advised of his rights), *overruled on other grounds*, *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998).

in the trial court, he did not preserve his right to have the complaint reviewed in the appeal.[22] We overrule issue two.

*Is Denbow entitled to a new punishment hearing based on the trial court's failure to include a burden-of-proof-for-wrongful-acts instruction in the charge?*

In issue three, Denbow argues there is error in the charge submitted at the conclusion of his punishment hearing because it does not contain an instruction that explains the jurors could not consider the evidence about three threats (the threat to shoot his father, to shoot the deputy, and to shoot the district judge) without finding first, beyond reasonable doubt, that Denbow did, in fact, commit that particular act. To determine whether the charge is defective based on the absence of an instruction relevant to the burden of proof that applies to a jury's consideration of evidence showing the defendant committed some other wrongful act, we first decide whether error in the charge exists.[23] If so, we then conduct a harm analysis to evaluate whether the error caused sufficient harm to justify awarding the defendant a new trial.[24]

The defendant faces an increased burden in proving harm when the record shows he failed to point out the defect in a charge to the trial court in the trial.[25] In a case of unpreserved error, the defendant must show the defect in the charge caused

[22]*Gauldin*, 683 S.W.2d at 413.
[23]*Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).
[24]*Id.*
[25]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

egregious harm to prevail in the appeal.[26] Under Texas law, jury charge error is egregiously harmful when the defect that is identified for the first time in the appeal affected the basis of the issues in the defendant's trial, deprived the defendant of a valuable right, or vitally affected a defensive theory on which the case was tried.[27] But "[e]gregious harm is a difficult standard to prove[,]" and whether the harm rises to that level turns on what the record shows occurred based on a review of the record as a whole in a case where the defendant is raising the complaint the first time in his appeal.[28]

Here, the charge should have contained an appropriate instruction requiring the jury to find the evidence established, beyond reasonable doubt, that Denbow made the threats to his father, a deputy, and a district judge before the jurors considered that testimony in assessing his sentence.[29] So the charge is defective because it lacks an appropriate instruction explaining the burden of proof applicable to considering a defendant's other wrongful act in resolving questions about the appropriate length of defendant's sentence.

---

[26]*Id.*

[27]*Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

[28]*Hutch*, 922 S.W.2d at 171.

[29]*See Huizar v. State*, 12 S.W.3d 479, 481-84 (Tex. Crim. App. 2000); *see also* TEXAS CRIMINAL PATTERN JURY CHARGES: GENERAL PUNISHMENT INSTRUCTION § C10.3 324 (2011) (General Principles—Burden of Proof for Wrongful Acts).

Step two in analyzing charge error requires the reviewing court to determine whether the error in the charge, when it was not the subject of an objection, created egregious harm.[30] To evaluate a record for egregious harm, we examine the entire record in the appeal.[31] In our review, we examine (1) the charge as a whole, (2) the state of the evidence, (3) the argument of counsel, and (4) any other information in the record relevant to evaluating whether the error caused egregious harm.[32] When the error resulted from the trial court's failure to instruct the jury on the burden of proof regarding a defendant's other wrongful acts, we focus on the "impact of the omission in the jury charge of a reasonable-doubt instruction."[33]

On appeal, Denbow characterizes the conduct related to the threats he made as "out of control rants directed at authority figures under conditions of stress." The record shows the testimony about these rants relate to three events: (1) testimony that, about a year before the trial, Denbow threatened to shoot his father; (2) a deputy sheriff's testimony that, about six months before trial, Denbow threatened to shoot the deputy following Denbow's arrest; and (3) a recording, admitted into evidence, of a pretrial hearing that occurred several months before Denbow's trial. In that

---

[30]*Almanza*, 686 S.W.2d at 171.
[31]*Id.*
[32]*See Allen v. State*, 253 S.W.3d 260, 264 (2008).
[33]*Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

hearing, Denbow is heard threatening the judge who is the presiding official in his hearing.

After studying the record, we conclude Denbow's argument complaining that the error caused egregious harm is unfounded. We reach that conclusion for five reasons. First, just because the charge omits the instruction requiring the jury to find defendant did in fact engage in the specific wrongful act beyond reasonable doubt, the omission of the instruction is not enough by itself to establish the error caused egregious harm.[34]

Second, there is no testimony in the record contradicting the testimony and evidence showing that Denbow made the three threats now at issue in his appeal.[35] As for the threat Denbow made against his father, two witnesses (Deputy Scott Jacks and Denbow's father) testified Denbow threatened to shoot his father. As to the threat against the deputy, Deputy Dustin Bock testified that Denbow threatened to shoot him after he arrested him for burglarizing Vickie's home while the deputy was taking Denbow to jail. The last of the three threats, Denbow's threat to shoot the district judge during a pretrial hearing, was captured on a recording of the pretrial proceeding. Denbow's attorney cross-examined the deputies about the threats Denbow made to his father and the deputy. And Denbow called his father as a

---

[34]*See Huizar*, 29 S.W.3d at 251.

[35]The district judge Denbow threatened in the pretrial hearing did not preside over Denbow's trial.

13

witness in the punishment phase of the trial. None of the testimony casts doubt on whether the threats occurred. For example, Denbow's attorney asked Denbow's father whether it was true that Denbow threatened to shoot him in the head? Denbow's father answered: "Yes." The lack of evidence contradicting the evidence about the threats diminishes whatever theoretical harm Denbow claims he possibly suffered from the error in the charge.

Third, in closing argument, Denbow's attorney never argued that Denbow did not threaten to shoot his father, the deputy, or the judge. Instead, Denbow's attorney argued: "[Denbow's] a nut, but he's not a dangerous nut." Of course, there is no evidence that Denbow shot or assaulted the three people he threatened to shoot. And the argument Denbow relied on in the trial is not inconsistent with the argument that his attorney presented in closing. In closing argument, the prosecutor did not focus on the three threats that Denbow complains about for the first time in his appeal. Instead, the prosecutor argued that Denbow should receive a lengthy sentence because he had already incurred fifteen prior convictions, two involving violence. To be fair, we note the prosecutor mentioned the three threats during his closing argument, suggesting these "are the words of a violent man, a violent man who has been convicted time and time and time again." But the thrust of the prosecutor's argument focuses on Denbow's fifteen prior convictions, not the threats.

Fourth, at the beginning of the trial, the trial court instructed the jury that "[t]he burden of proof throughout the trial is always on the state." And during jury selection, the prosecutor told the jury four times that the State bore the burden of convincing the jury that Denbow committed the elements of burglary beyond a reasonable doubt. We have no reason to believe the jury reversed that burden when evaluating the recording and testimony about the threats.

Fifth, the jury decided Denbow should serve a fifty-year sentence. That sentence is in the middle range available for defendants like Denbow, who as a repeat felony offender under the allegations in his indictment faced an enhanced sentence if found guilty of committing two prior felonies (other than state-jail felonies) in the order that is required under the repeat-felony-offender statute.[36] Denbow's 50-year sentence is a reasonable sentence considering the jury's findings on the enhancement counts and evidence showing that Denbow has fifteen prior convictions.

For the reasons explained above, we conclude that Denbow's complaint about the error in the charge lacks merit because the error did not result in egregious harm. We overrule Denbow's second issue.

---

[36]*See* Tex. Penal Code Ann. § 12.42(d) (creating an enhanced sentence range of twenty-five to life for defendants convicted of two prior felonies sequenced in the order required by the repeat-felony-offender statute); *Huizar*, 29 S.W.3d at 251.

Conclusion

Having overruled all three of Denbow's issues, the trial court's judgment in trial court cause number B190185-R is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 24, 2021
Opinion Delivered September 15, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

16